UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

McKINLEY KERR-FLETCHER,

    *Plaintiff*,   CASE NO. 16-cv-11030

*v*.   DISTRICT JUDGE MATTHEW F. LEITMAN
    MAGISTRATE JUDGE PATRICIA T. MORRIS

T. SCHULTZ,

    *Defendant*.
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. 10)**

### I.    RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendant's Motion for Summary Judgment, (Doc. 10), be **GRANTED**, and that Plaintiff's complaint, (Doc. 1), be **DISMISSED WITHOUT PREJUDICE**.

### II.    REPORT

#### A.    Background

Plaintiff McKinley Kerr-Fletcher is a prisoner confined in the Michigan Department of Corrections ("MDOC") at the Saginaw Correctional Facility. On March 18, 2016, he filed a *pro se* complaint with the Court alleging that Defendant T. Schultz violated his Eighth Amendment rights. (Doc. 1). He was granted leave to proceed *in forma pauperis* on March 21, 2016, (Doc. 3), and all pretrial matters were referred to the undersigned Magistrate Judge on April 27, 2016. (Doc. 7). Soon thereafter, on May 10, 2016, Defendant filed the instant Motion for Summary Judgment. (Doc. 10).

1

### B. Summary Judgment Standard

When a movant shows that "no genuine dispute as to any material fact" exists, the court will grant her motion for summary judgment. Fed. R. Civ. P. 56(a). In reviewing such motion, the court must view all facts and inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party bears "the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986)) (internal quotation marks omitted). In making its determination, a court may consider the plausibility of the movant's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper where the moving party shows that the non-moving party cannot meet its burden of proof. *Celotex*, 477 U.S. at 325.

The non-moving party cannot rest merely on the pleadings in response to a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Instead, the nonmoving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). The non-movant cannot withhold evidence until trial or rely on speculative possibilities that material issues of fact will appear later. 10B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2739 (3d Ed. 1998). "[T]o withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party." *Cosmas v. Am. Express Centurion Bank*, 757 F. Supp.

2d 489, 492 (D.N.J. 2010). In doing so, the nonmoving party cannot simply assert that the other side's evidence lacks credibility. *Id.* at 493. And while a pro se party's arguments are entitled to liberal construction, "this liberal standard does not, however, 'relieve [the party] of his duty to meet the requirements necessary to defeat a motion for summary judgment.'" *Veloz v. New York*, 339 F. Supp. 2d 505, 513 (S.D.N.Y. 2004) (quoting *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003)). "[A] pro se party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (quoting *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

When the non-moving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. The court will rely on the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 404 (6th Cir. 1992). After examining the evidence designated by the parties, the court then determines "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so onesided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

### C.   Exhaustion of Administrative Remedies

Congress passed the Prison Litigation Reform Act of 1995 ("PLRA") "in response to a sharp rise in prisoner litigation in federal courts." *Woodford v. Ngo*, 548 U.S. 81, 83 (2006). By passing the PLRA, Congress attempted to ensure that "the flood of nonmeritorious [prisoner civil rights] cases [did] not submerge and effectively preclude consideration of the allegations with merit." *Jones v. Bock*, 549 U.S. 199, 202 (2007). Congress equipped the PLRA with several mechanisms designed to reduce the quantity and increase the quality of the claims that came to federal court. *Id.* A "centerpiece" of the PLRA was the "invigorated" exhaustion requirement: "No action shall be brought with respect to prison conditions under § 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (2000); *see also Woodford*, 548 U.S. at 84 ("A centerpiece of the PLRA's effort 'to reduce the quantity . . . of prisoner suits' is an 'invigorated' exhaustion provision.") (quoting *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). Courts consider the PLRA's suits 'brought with respect to prison conditions' to include "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532.

The *Woodford* Court held that the PLRA's exhaustion of administrative remedies requires (1) that no remedies currently remain available, and (2) that the remedies that had been available to the prisoner were "properly" exhausted. 548 U.S. at 93. Prior to *Woodford* there were conflicting interpretations of the PLRA's exhaustion requirement. Some circuits interpreted the exhaustion requirement to mean that plaintiffs must have no more

4

administrative remedies available before bringing their cases to federal court. *Id.* Others interpreted it to mean that plaintiffs must have "properly" exhausted their available remedies by following the agency's procedural requirements such as "deadlines and other critical procedural rules." *Id.*

In finding that exhaustion of remedies required "proper" exhaustion, the Court was persuaded by the "striking[]" similarities between the language of the PLRA and the doctrine of exhaustion in administrative law. *Id.* at 102. It also considered the purposes behind the exhaustion requirement, reasoning that an interpretation that did not require proper exhaustion would render the PLRA "toothless"–enabling a prisoner to bypass prison remedies by simply disregarding or ignoring deadlines. *Id.* at 95. "Proper exhaustion" means that the plaintiff complied with the administrative "agency's deadlines and other critical procedural rules." *Id*. at 90. Complaints and appeals must be filed "in the place, and at the time the prison's administrative rules require." *Id.* at 87 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002)).

In *Jones*, the Court instructs us to look to the prison's policy itself when determining "whether a prisoner has properly exhausted administrative remedies–specifically, the level of detail required in a grievance to put the prison and individual on notice of the claim." 549 U.S. at 205, 218 ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the *prison's requirements*, and not the PLRA, that define the boundaries of proper exhaustion." (emphasis added)). Specifically, the *Jones* Court was determining whether a Plaintiff needed to identify the Defendant by name during the initial grievance process. Since

5

MDOC's policy at the time did not require that level of specificity the Court did not find that the PLRA required it. *Id.*[1]

A plaintiff does not need to show proper exhaustion as a part of their complaint. *Jones*, 549 U.S. at 216. Rather, failure to properly exhaust remedies is now an affirmative defense. *Id.* The *Jones* Court struck down the Sixth Circuit's procedural rule placing the burden on prisoners to plead and prove exhaustion in their complaint. *Id.* at 921.

### D.  Analysis

The MDOC provides prisoners with a grievance procedure for bringing forward their concerns and complaints. *See* MDOC Policy Directive ("PD") 03.02.130 (eff. July 9, 2007). The MDOC's grievance procedure consists of steps that a prisoner must follow prior to filing a complaint in court, and each step is accompanied by a time limit. First, the grievant must attempt to resolve the issue with the person involved "within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control . . . ." MDOC PD 03.02.130(P).

If the initial attempt to resolve the issue with the person involved is impossible or unsuccessful, the inmate must then submit a Step I grievance form within five business days. MDOC PD 03.02.130(V). If the grievance is accepted, the prison staff is required to respond in writing to a Step I grievance within fifteen days, unless an extension is granted. MDOC PD 03.02.130(X). If the inmate is not satisfied with the response, or does not

---

[1] The MDOC has subsequently changed its policy, requiring that in order to properly exhaust remedies plaintiffs need to identify all defendants in the initial grievance that they later name in the subsequent federal complaint. *See infra.*

receive a response within fifteen days, he must file a Step II appeal within ten business days. MDOC PD 03.02.130(BB). Once again, if the inmate is dissatisfied with the response at Step II or does not receive a Step II response within fifteen days, he has ten business days to submit a Step III appeal to the Prisoner Affairs Section. MDOC PD 03.02.130(FF). The Step III response concludes the administrative grievance process. If prisoners are not afforded a response to their grievance by staff within the required time frames, they may pursue such grievance to the next step within ten business days of the response deadline's expiration. MDOC PD 03.02.130(T).

Plaintiff's grievance arose during his stay at the G. Robert Cotton Correctional Facility ("CCF"). (Doc. 1 at 1). In his Response to Defendant's Motion, he concedes that he never completed the grievance process, but assigns the blame to the CCF Grievance Coordinator, Ms. Christine Hemry ("Hemry"). (Doc. 12 at 1-4). He suggests that his request for a Step II grievance form was never answered, that his mother, Ms. Karen Kerr ("Karen") called Hemry to inquire into the matter, and that Hemry told Karen that his "request for a step two grievance form would do him no good due to him filing his step one grievance too late and that it would be a waste of time to send him" the form. (Doc. 12, Ex. E). In addition, Plaintiff contends that while enduring treatment in the aftermath of his stabbing, the "facility inspector" in the hospital told him "not to write a grievance until the investigation was completed by the facility and the state police, and that sanctions could be handed out to the defendant." (Doc. 12 at 3).

The evidence in the record disagrees with Plaintiff's allegations. Although Plaintiff provides an affidavit from Karen certifying that Hemry confessed over the phone to

7

willfully ignoring Plaintiff's request for a Step II grievance form, (Doc. 12, Ex. E), Defendant submits an affidavit from Hemry certifying just the opposite, (Doc. 14, Ex. A at 2) ("I have never nor would I ever tell a prisoner or his family member not to go to Step II or Step III of the grievance process. . . . I have never spoken to Ms. Karen Kerr."). Although a he-said-she-said scenario may sometimes evince a genuine issue of material fact, Defendants also furnish a "screenshot" showing that Hemry sent a Step II grievance form to Plaintiff on December 22, 2015 and April 25, 2016, neither of which Plaintiff took advantage of to proceed in the grievance process. (Doc. 14, Ex. A-1, Ex. A at 2). In light of this evidence, the notion that Hemry willfully impeded Plaintiff's swift march through the administrative review process seems dubious.

    Similarly improbable is Plaintiff's bare assertion that a facility inspector told him not to file a grievance, particularly as juxtaposed with Plaintiff's demonstrated commitment to filing his initial grievance form and acquiring a Step II grievance form. Even if taken as true, however, such facts would not excuse Plaintiff's failure to exhaust his administrative remedies. *E.g.*, *Boyd v. Corrections Corp. of America*, 380 F.3d 989, 998 (6th Cir. 2004) ("[A prisoner's] nonspecific allegations of fear and his subjective feeling of futility do not excuse his failure to exhaust his administrative remedies."); *Thomas v. Woolum*, 337 F.3d 720, 733 (6th Cir. 2003) ("Exhaustion also requires a plaintiff to bring a grievance to the state before coming to federal court even when the state has made clear that it will not grant the relief requested."); *Bell v. Campbell*, 43 F. App'x 841, 843 (6th Cir. 2002) (refusing to credit a delayed response to a prisoner's grievance as

excusing his exhaustion requirements because he "could have moved the grievance to the next stage if it was improperly delayed").

Apocryphal allegations may at times prove authentic, but only if bolstered by evidence sufficient to counteract their unlikelihood. The evidence on file happens to validate Defendant's skepticism. Because there is no genuine issue of material fact as to Plaintiff's failure to properly exhaust his administrative remedies, his complaint should be dismissed without prejudice. *Accord Parker v. Granholm*, No. 4:06-cv-126, 2006 WL 3446490, at *5 (W.D. Mich. Nov. 6, 2006) ("[D]ismissal of an action without prejudice is appropriate when a prisoner has failed to show that he exhausted available administrative remedies.").

### E. Conclusion

For the aforementioned reasons, **IT IS RECOMMENDED** that Defendant's Motion for Summary Judgment, (Doc. 10), be **GRANTED**, and that Plaintiff's complaint, (Doc. 1), be **DISMISSED WITHOUT PREJUDICE**.

## III. REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505

(6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Date: November 29, 2016　　　　　　　　　　S/ PATRICIA T. MORRIS
　　　　　　　　　　　　　　　　　　　　　　Patricia T. Morris
　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

## CERTIFICATION

　　　I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record. A copy was also sent via First Class Mail to McKinley Kerr-Fletcher #652861 at Saginaw Correctional Facility, 9625 Pierce Road, Freeland, MI 48623.

Date: November 29, 2016　　　　　　　　　　By s/Kristen Castaneda
　　　　　　　　　　　　　　　　　　　　　　Case Manager